Good morning, Your Honors. May it please the Court, Judah Lakin, appearing on behalf of Petitioners Juliana Calmo Matias and her children, Sonia and Luis, I aim to reserve two minutes for rebuttal. Calmo Matias is a survivor. She survived her village being burned down as a five-year-old child. She survived being raped, beaten, and exploited by multiple men as a teenager, and she also survived being targeted and beaten by local militia groups. As this Court is aware, Ms. Calmo Matias presented those facts in an unopposed motion to reopen that is based on ineffective assistance of counsel and is currently pending before the agency. Nevertheless, she is here today to vindicate her rights and her children's rights on the current petition for review. At a minimum, this petition for review must be remanded for the agency to properly apply the law. The agency's decisions here do not represent the kind of careful consideration that individuals pressing claims for fear-based relief are required to receive under this Court's precedent. I'd like to use our limited time today to focus on three legal errors that the agency committed with respect to Ms. Calmo Matias' applications and then turn to one of the legal errors in Ms. Calmo Matias' applications. So first, I'd like to start with Nexus. With respect to asylum, the Board's language showed that it applied the wrong legal standard, and its decision affirming the IJs reveals that it did not conduct the proper analysis under the statute's at least one central reason test. The Board stated that Ms. Calmo Matias failed to prove that the criminals targeted her family because of their Mayan ethnicity rather than for economic reasons. Since at least this Court's decision in 2009 in Parasimova, it has been the law of this circuit that while a protected ground must be the but-for cause of the persecutor's actions, it need not be the only cause. And an individual seeking asylum need not prove which cause was dominant. Here, the Board's use of the term rather reveals that it did not bother to conduct a mixed motive analysis, instead assuming that economic reasons were the sole reason behind the home invasion. But in this interpretation of what the agency did is buttressed by two other key facts in the decision. First, that the decision cites to and relies on the now vacated matter of AB, which our current Attorney General vacated, calling it an opinion that, quote, could be read to against asylum claims based on private conduct, end quote. And second, and relatedly, neither the Board nor the IJ mention any of the circumstantial evidence presented in this case that was relevant to a nexus determination, including that the criminals were Latinos, that they targeted numerous mom households in an area that was predominantly mom, that moms are widely targeted and mistreated in Guatemala, and that the two hours of this predominantly mom area. As explained by this court in SINHA, that type of evidence may not be dispositive, but it is nonetheless circumstantial evidence relevant to a nexus determination. And here, neither the Board nor the IJ mentioned any of this evidence, much less considered it. In fact, neither decision has a single reference to any of the evidence in the record. And perhaps even more tellingly, neither decision has a catch-all phrase that it considered the evidence, even if not mentioned. The IJ's decision, excuse me, does not even mention that Ms. Camo-Mateas is mom. There's no discussion of her mom identity in the opinion. That alone requires remand, but the agency also erred with respect to its withholding nexus determination. The Board did not acknowledge that there is a separate standard for withholding, only citing to the at least one central reason standard for asylum. Moreover, it did not conduct an independent analysis of the withholding of the nexus with respect to withholding. The IJ, who did acknowledge that there were two standards, misstated the legal standard with respect to withholding, calling it, quote, more stringent than asylum. Even though... May I interrupt on that and just clarify? When we do think of withholding, we think of it as more stringent because of the more likely than not standard. Yes, Your Honor. But obviously, the nexus needs to precede that, is what I understand your argument to be. Is that right? Yes, Your Honor. But if one of the reasons is a reason that's not within that constellation of protected grounds, say economic targeting, then how does that figure in here and why wouldn't it be harmless in this case, the way that the BIA ultimately constructed the analysis? Well, the BIA didn't actually do an analysis, which is the major problem. So she brought a claim based on her mom identity and said that the, you know, with respect to the home invasion, that they were at least in part motivated by her mom identity. And she had circumstantial evidence pointing to that. So even if the agency thought that didn't amount to at least one central reason, it would have necessarily have to have considered it under a much lower standard, as articulated by this court in Barajas-Romero, and then most recently in Garcia v. Wilkinson. So it's not really a lesser standard as to the ultimate relief, but only as to the nexus so that it's a reason, is that right? That's correct, Your Honor. And I think that distinction here is critical. And I think Garcia is instructive here, because here the court misstated the nexus standard, just as it did actually in Garcia. And in Garcia, this court said, quote, the difference between the motive standard matters, particularly in cases like this one, in which the BIA's decision turns on its nexus determination. Here the entire opinion only reached nexus. So the fact that they didn't get the nexus standard correct is critically important. You'd agree that there's no direct evidence that she was persecuted on account of a protected ground. In other words, she didn't testify that the intruders identified her identity, right? That's correct, Your Honor. And that's what the BIA pointed to. Right. So you're left with circumstantial evidence. What's your best circumstantial evidence that these people were being targeted because of their ethnicity? Yes, Your Honor. I think our best evidence is that the people who were doing the home invasion were Latinos. I think, in addition, that this was in a predominantly mom area. She testified, and it is in her declaration, that they targeted other mom individuals. There's background evidence in the record showing that mom individuals are targeted and mistreated. And the Guatemalan government has not put a police presence in this mom area. It's at least two hours away. So all of that, while potentially not dispositive and potentially difficult under a substantial evidence standard, it still amounts to legal error for them not to consider any of that evidence. It's all relevant to the nexus determination. And I think that's made clear in this court's precedent in Sinha and others. They have to consider that evidence. And so this court should explain the standard and remand so that they consider that evidence. And there is no sort of harmless error standard with respect to legal error. If the agency doesn't do what it's supposed to, this court corrects it, sends it back, and the agency gets another try. Let me ask you about exhaustion. The government attacks your case on exhaustion on all levels. I'm particularly concerned about the removability findings with respect to the children. Do you have something more than a 1980 district court opinion in Florida? Admittedly, Your Honor, our argument with respect to the removability on exhaustion is difficult. But let me try and say two things. So one, I do think, as we argued in our briefing, that it is inherently tied with relief. So you can't reach relief without reaching removability. There's a regulation that you need to reach removability. So I think that's critically important. But I will say, on the other claims with respect to exhaustion, I don't think any of them are well-founded. Between the notice of appeal, the briefing, and this court's precedent in Jang, Aiden, Figueroa, it is clear that these claims were raised and presented to the agency. And if this court has concerns about any of the other ones specifically, I'd be happy to address them. But I think they were all raised. I see that I'm almost out of time. Could I just ask you one more question on this derivative situation? Yes, Your Honor. I mean, there are applications both for the mother and the children individually, correct? That's correct, Your Honor. So, which you would need for cat relief in the end, that they each need a separate application. But, it makes common sense that you would consider each individually, but is there precedent that we look to, to derive that principle, other than common sense? I'm not sure I understand the question, Your Honor. The respondents presented, as you say, two claims. One under the mother as derivatives, but they independently presented I-589s. And they had a separate claim. And I think with respect to sort of, are the claims we raised for the children, the strongest claim that we have is that the agency was presented with the claim of a relationship to their mother, so a family-based claim. It was specifically referenced in the notice to appeal, and the agency failed to consider or reach it. So, you know, as this court articulated in Rios, that claim was presented to the board, the board failed to reach it, that alone requires a remand just for the children. And that claim being the children's individual claim, is that right? That's correct, based on their relationship to their mother. Thank you. Yes. Thank you. We'll give you some time for rebuttal. Okay. Thank you. Ms. Blosser? Good morning, Your Honors. May it please the Court, Kristen Blosser on behalf of the United States Attorney General Merrick Garland. The petition for review in this case should be dismissed in part and denied in part for two reasons. The first being that petitioners have raised a number of issues that were never exhausted before the board, and so this court lacks jurisdiction to review those. The second, substantial evidence supports the agency's denial of asylum, withholding of removal, and protection under the Convention Against Torture. Just briefly with respect to the exhaustion points, Your Honors, these issues that the government contends were not exhausted are laid out on pages 14 to 15 of our brief. They include the legal issue of what standard to apply to a nexus determination, whether petitioners corroborating evidence independently established their asylum and withholding of removal claims, and whether the agency failed to consider all evidence that was relevant to the probability of future persecution and torture, and finally, the issue with respect to the children's claims regarding removability and the consideration of their claims. I'd like to make two points with respect to this particular aspect of our argument. In the reply brief, petitioners take issue with the government's use of the term argument, and I would argue that whether we refer to them as issues or arguments, the fact still remains that the issues need to have been presented to the board with sufficient clarity such that it would be able to understand and was on notice that these were the issues the board was raising, and that was not done in this case. If we were to compare the brief to the board and the brief that was filed in this court, it is readily apparent just from the face of these documents that these are very different issues that are being raised before this court. But then the issues only have to be raised in fairly summarily in the brief and order under our precedent and saying in order to require exhaustion, I mean, isn't the brief on the record on pages 29 through 39 replete with the arguments regarding asylum and withholding of removal and cat relief? Well, Your Honor, I mean, petitioners in the brief to the board do argue that they present argument with respect to asylum and withholding of removal. I would push back slightly on the cat issue. They did not articulate any error in the immigration, I mean, yes, in the immigration judge's decision with respect to cat. In the conclusion, they also don't request cat relief protection. They only request asylum and any alternative withholding of removal. I would point the court to the decision in Zara. Yes, I'm aware of Zhang, which requires petitioners don't have to present the arguments in the same exact form before this court as they were presented before the board. But again, it has to be presented with enough specificity that the board would be on notice that that is what they were arguing. And specifically with respect to the issues surrounding removability, as I know Your Honor mentioned a concern with that particular issue, there was no challenge to removability in the brief to the board. And this issue simply was not exhausted. The board would not have been able to read the brief and take from that that this is what petitioners were challenging. What about the second? Let me just ask you, the notice of appeal raises the failure to review materials regarding mistreatment of indigenous minorities, right? Yes, Your Honor. And is there something in the IJ or BIA's decision where they addressed the petitioner's testimony that the criminals who ransacked her house and had done it to her neighbors, all of whom were mom and or the country conditions evidence documenting the violence and discrimination that those folks suffer? Was there something in there in the IJ and BIA's decisions on that? The IJ and the board don't specifically reference the country conditions evidence. But the agency is entitled to the presumption that it considered the record evidence and absent some indication that that presumption should not apply, it does apply. And there isn't such an indication. Because under that theory, all you would have to say is, we therefore hold that there's not sufficient evidence of past persecution or future. And you would assume they looked at the record. But it's got to be more than that. This is a very, very brief IJ decision. And you can read the record and see that the real focus here is potential targeting of this mom group, both by virtue of the geography and also the past and the country conditions. So how can you have a decision that's even reviewable if there's no reference to any of the evidence, which is really the key focus? I mean, under your theory, all the BIA or the IJ has to say is, I make this decision and then you just assume, well, you must have looked at the whole record to make that. Don't you have to, isn't there a little bit more of an obligation? I don't mean you have to be, you know, you don't have to write a treatise, but you got to write something. Well, Your Honor, I take your point that the immigration judge's decision was brief in this case. But I think that that is a reflection of petitioner's claims as presented were also very brief. The testimony was focused on the single incident of armed intruders who were unidentified. We don't know who they are. To the extent that petitioners before this court have indicated that they were Ladino, the record does not. Petitioner, when she testified, stated over and over she did not know who these people were. And she didn't, when she was asked about features or appearance, she didn't, she did not have any features or appearance that she was able to point to. Now, she did note that these people spoke Spanish. And from that, she inferred that they were non-Indigenous. But again, this issue of nexus is a factual issue. The agency looked to what was most pertinent to its decision, and it was petitioner's testimony indicating that there was a motive that was not a protected motive. The agency said that there was nothing that indicated that these individuals were motivated on account of petitioner's race or ethnicity. The evidence did suggest criminal motives or economic motives. And as this court has said in Zatino and a number of other cases, a general desire to be free from harassment by the agency targeted its analysis to what was most relevant here. And, and it wasn't required to write an exposition on the, on the issue, particularly where there wasn't even need to mention the only focus of the hearing, which was the mom identity. You can't get, you can't get that from this decision. You wouldn't even know what this case is about if you read the decision. Well, Your Honor, the board's decision does, does reference the fact that petitioners are Indigenous. At page three of the administrative record, it recognizes that petitioners argued they'd been subjected to past persecution on account of their Mayan race. So there was recognition of, of their Indigenous identity. But again, when we're dealing with this factual issue of what it was that motivated the alleged persecutors, that is reviewed under a substantial evidence standard. And there simply isn't evidence in the record that would compel a contrary conclusion with respect to. What is the substantial evidence that they were there just to hold the family hostage for money as opposed to targeting them in this village in which they spoke an Indigenous language and the perpetrators spoke Spanish or some combination that would identify them as Ladino? What's the evidence? I would point, Your Honor, to petitioner's testimony that they were seeking money. And then I would also direct Your Honor's attention to petitioner's declaration at page. 125 of the administrative record. Which explained that she was afraid because they told her she would be back, they would be back for the money. There was no reference to this other, her race or ethnicity as being a reason. And I would also point out that the country conditions. The 2018 Crime and Safety Report indicates that violence and this kind of robbery, extortion, these things are happening all over the country of Guatemala. It's not isolated just to an Indigenous location. And I see that I'm over my time. So I just briefly request that the court dismiss in part and deny in part the petition for review. Thank you. Thank you, counsel. We'll hear rebuttal and let's put on two minutes. Thank you, Your Honors. Just briefly, I think as indicated by this court's questions, this is not a case where there is any indication that the board or the IJ considered the relevant evidence. As Your Honor pointed out, the IJ's decision doesn't mention mom identity, although the board's does. Well, the BIA, in fairness, did mention and address it. It mentioned it, but it did not address what you've raised as circumstantial evidence, but it did address it. It did, Your Honor, but it affirmed the IJ on the IJ's reasoning and it only pointed to the absence of evidence. So as Your Honor pointed out, it simply said, well, there's no direct evidence. But that's not what this court's precedent requires. This court's precedent requires consideration of all the evidence, including the circumstantial evidence. And as the government did in its briefing, the government is relying on substantial evidence. And although we argued substantial evidence and think we're right on that, this court doesn't need to go that far. All this court needs to find is legal error with respect to any of the errors we raised in our brief or presented here. And that's enough for a remand. And I just want to make two quick points on that. So in addition to sort of the nexus finding, she also made a argument that just simply as a result of being mom independent of the home invasion, she was potentially facing persecution. And there's evidence in the record about that. And this court has been clear that you have to consider the social, political, cultural context. You have to consider that there was a genocide against people like her less than roughly 20 years ago. That's clear in Nababa, in CORE, in Montesino, in COTAS, that this court is clear. Whether it's a disfavored group, whether it's pattern and practice, whether it's just the social and cultural. Nobody's raised pattern and practice or disfavored group here. No, but I just say that to get to the idea that she's a part of a group that has been discriminated against and persecuted throughout history of Guatemala. And that's relevant here. And then finally, I'll just say that we also think these errors inform the Catt decision. And with respect to Catt, there's no question that all evidence must be considered. That's by the regulations. And this court has been dogmatic in reversing cases where they failed to consider evidence. And there's evidence here about violence. She specifically stated she had been beaten. That's a CAR 94. And none of that was considered. So we think that also requires reverse zone remand. So we respectfully request that this court grant the petition for review and remand with instructions where it will likely be joined with the pending motion to reopen. Thank you. Thank you, counsel. Thank you both for your arguments today. The case just argued will be submitted for decision.
judges: THOMAS, McKEOWN, Orrick